Thank you. Good morning, Your Honor, and may it please the Court, James Herrington for the Plaintiff Appellant, Slep-Tone Entertainment Corp. Slep-Tone is a small company that made a product that was very important to the karaoke industry. That product is the Sound Choice brand of karaoke accompaniment tracks. Now, in this case, there are two sets of claims that are at issue before the Court today. One are trademark and service market infringement claims, and related torts to those, as well as a contract claim that arose from Mr. McCullers' breach of prior settlement making. Is the state law counterfeiting claim before us? It is. It was dismissed by the District Court. Dismissed by the District Court. I don't find very much in your briefing about it. Maybe a footnote. It's not. It's not? That's great. Well, the standard is, there's not much in the brief, because the standard for whether something is a trademark infringement or not, or a state law counterfeiting claim or not, a trademark counterfeiting claim or not, it turns on the same question. Those claims rise or fall. Well, there's a different question, I think, that Judge Hurwitz is getting at. Ordinarily, if an argument is not raised separately and clearly in the opening brief to this Court, we will not decide it, even if it was discussed ad nauseum in the District Court, that it's considered a waiver. So I think his question goes to whether, even though it was clearly pleaded and dealt with in the District Court, whether your opening brief sufficiently raises a separate state-based counterfeiting statutory claim, because it's somewhat different from a federal claim in its criteria. What's she saying? I understand the point. I believe it was briefly raised in our brief for part of the pod. One more question, because you said that the standards are the same. They're not, are they? The one thing I'm pretty certain about is that I know Arizona law. I'm not so sure I'd be able to copyright a trademark law. But under Arizona law, there's a statutory presumption, and you have to show sale or distribution. And that's a little bit different than federal trademark law, isn't it? Right. I think there are some differences. I think the threshold question is the same. But I think that if this Court decides it wasn't appropriately raised on appeal, we don't have an issue with that. And moving on, Madam McClain, one of your talks was about where is the consumer confusion about the producer of goods requirement. The digital copy has subtones marked in it. The only difference would appear to be the format in which it's presented. What is the confusion? Well, the confusion is rooted in the Supreme Court's decision in the Daystar case that for purposes of the landmark, the origin of goods or the origin of services in this case is not the author of the underlying content. That would be a copyright claim. But rather the creator of the physical goods that are in use. And in this case, Mr. McCuller did not use the original goods that were supplied to him. He used copies. But you authorize copies, right? You allow them to actually use copies. And it seems to me you're arguing really here just about the fact that they didn't get permission to do it. Not that there's confusion, right? But that if they had gotten permission, you wouldn't be arguing confusion. Is that right? Right. Because our quality controls would have come into play. Put quality aside for a second. I'm a consumer of karaoke. The clock has reset. I know. It was one of our little tricks. Let's see if we can show you. We'll put you back on mute by the time you're supposed to have it. Okay. I assume I'm a consumer of karaoke, which is to say I go to karaoke bars and sing. I wouldn't be confused about where this program came from, would I? Your name is on it. Your client's name. My client's name is on it. But I think, first of all, the likelihood of confusion is a question of fact or at best. On summary judgment, when the facts are not disputed, then we don't. So here it's undisputed that every consumer saw your client's name on the program. If they cared. I think procedurally the trademark claims are 1286, and therefore it was inappropriate for. Well, there may be other reasons. Okay. But fair enough. But answer that question. If every consumer saw your client's name on the program, how could there be consumer confusion? Because my client did not make the goods that were in use. It did not authorize the services that were being provided. It is true that Sleptop allows copying, but there are very specific terms and conditions under which that copying can occur, and those terms and conditions are geared toward maintaining high-quality standards. That sounds to me like a copyright claim. That's my view. I'd understand everything you were saying if this were a copyright claim, but it's a trademark claim. Well, it is a trademark claim for the reason that both were noted. It's an issue of quality control. We have no interest in, at least as far as this case is concerned, in the actual content of what's being claimed. I take it you don't have a copyright. I don't have content. You don't really have a copyright. That's not before the court. Okay. The issue here is not the communicative content of that material. It's about the quality of the copy. And there is ample citation in the record, in the second amendment complaint, to show that we have an issue with quality control. Mr. McCuller has employed it. He has discarded somewhere between 60% and 90% of the information in Paragraph 26, in the second amendment complaint, that's associated with that content. Is this case distinguishable from the Seventh Circuit case? It is very much distinguishable, first of all. In the Seventh Circuit case, we're talking about Robinson. The defendant in that case was a karaoke bar. There were only the goods trademarks that were at issue. We did not sue them on the services marks. And the way that that karaoke bar actually ran its business, it did not charge anything for its services, its karaoke services. It was just something that was provided. Well, but put aside the sale or distribution issue, I read Rumsey as saying essentially what Judge Bowman was saying, which is that there couldn't be consumer confusion here. And that seems to be really exactly the situation in this case, doesn't it? Well, and here's the problem with that. We're in Rule 12.6. Consumer confusion, whether there is or not, is a matter of fact. We have not had an opportunity to present that. Boy, do we have to at least allege it. I mean, in terms of facts that we would recognize to be different, which you allege is that they didn't get permission to show the same thing, which is not an allegation, that the actual image that was shown or the product that was shown was different, right? There is confusion in that. Hold on, answer my question. Do you allege that the image or the mark that was shown was actually different on the copy than on your CDG version? The image itself, yes, because of the discarding of information. No, no, that's not what Judge Bowman asked. He asked whether or not the trademark, the mark that was shown to consumers in this case, was different than your mark. I think that the image itself was the same. The issue is, however, that the quality of the goods to which that mark was attached and the quality of the services to which that mark is attached is not at the level that Sleptone set in terms of its quality control. I don't think you can separate those as a matter of law. Trademarks are designed to be an indicator to the consumer of quality control. And so the confusion occurs with Mr. McCuller as a free actor, without consulting us. He uses his own level of quality control without consulting us. He uses our mark in that manner. Consumers are going to be confused, because they assume that this is the level of quality that we endorse. So, go ahead, go ahead, Judge. I'm just going to change the topic since we're still on this. No, no, no, go ahead. I wanted to get your thoughts on the motion for substitution of the successor interest. Could you comment briefly on that, please? I can just say, and I see my time is running out. I know, but please answer my question. Correctly. The motion for substitution is a very basic motion. Essentially, Phoenix Entertainment Partners acquired the assets of Sleptone Entertainment Corporation after this case was filed, even after this appeal was filed. And so we're simply seeking to have Phoenix's successor interest be the real party of interest. Assets or assets and liabilities? Assets only. Should we just substitute, should we just add them as a party as opposed to substitute? I'm sorry, I may have misspoken a bit. There are certain liabilities, because there were contracts that were acquired, including on the contract in this case. And Sleptone had obligations under that contract as well. So, Phoenix would step in on them at that point. But should we add them rather than substitute them? I think that would be up to the Court's discretion. Of course. It's going to be a similar position. I don't necessarily have a position. I think either one is fine. Thank you. Thank you. The next one, Ms. Mori. May it please the Court, Your Honor, I seek counsel. My name is Lorraine Mori, and I represent the appellees who hired their sound and DJ services LLC, and are Ms. Jane McHollard, and will be referring to them collectively as wired. This Court should affirm the District Court's rulings in this case for two reasons. First, Sleptone has attempted and ran around a copyright law to assert its trademark infringement. As Judge Wake of the District Court correctly stated, Sleptone's attempt to stuff copyright claims into a trademark container fails. Second, Sleptone's breach of contract claims are precluded as a matter of law by Sleptone's own contract and their own actions, and they should not be allowed a second bite at the proverbial apple. Well, you guys got the second bite at the apple in the sense because you, your client, breached the settlement agreement, and therefore gets away without paying what was agreed to be paid under that agreement. So, you know, the equities certainly are not all on one side of this case, and I am, I guess I'm not an expert in Arizona law. That's probably the understatement of the day, but I'm uncertain why that isn't a valid claim at the breach of the settlement agreement. Well, Your Honor, my client was not the only one that did default on the agreement. Sleptone did as well. Well, but for purposes, we're on a 12 v. 6 here. Okay. Okay. Did they sue you for breach of the settlement agreement? As I understand it, they could have sought only to revive their trademark claims, but the complaint is broad enough, I think, so that it's the extent that you sued, hasn't it? Well, Your Honor, the contract claim was actually not on a 12 v. 6. It was actually on a motion for some reason. Okay. But still, they are seeking damages, and it drove differently, were they not? Are you talking about Sleptone? Sleptone. Yes, Sleptone. Okay. So why do we find an election at the pleading stage as opposed to normally, in the choice of remedies? You let somebody get to the end of the case, and we say, okay, you're either entitled to an introspection or damages. Which do you want? Why isn't Sleptone here in the position of having to choose early on for its breach of contract claim? Well, actually, Your Honor, they did choose early on because it was their contract. It was undisputedly integrated, and their contract said that you can either sue for trademark infringement or sue for breach of contract. Right, but that doesn't answer the circumstances. What if they sued for both? Is that an election of one rather than the other? Actually, I think that is. Well, why isn't it an election just as valid to say, well, they've elected to sue under the contract. We have to ignore the suit related to trademark. Why isn't that equally a valid way to look at the election? Because the way that the contract was written was using that word or. I understand that. That's A or B. And if they do both, you say, well, it has to be B. You just, you know, A is no good anymore. But I don't see why A isn't the one that's the selection and B goes away. Well, because, Your Honor, in the contract where it says it's an option, it can do A or B. I understand that totally. Let's assume that it's an option. It says, I'd like A or B. It goes to court and says, I have an option, Judge. I'd like A or B, you choose. Has it waived both? Well, I don't know that it would waive both. Which one? However, if we use, if we use A, I don't know the answer to that. Why don't, why don't, why don't we, I don't understand why it isn't equally valid to say, they've got a claim here for breach of the settlement agreement. And because of the way it was written, they can't seek these trademark damages. So go forth and litigate on the settlement agreement only. Why isn't that the right answer? They could have done that, but that's not what they did. I understand that. But what the court said was, you have to ignore the settlement contractual claim and go only for trademark. But I don't see why it isn't the opposite. But wouldn't that then render the word or as meaningless? No. Is it just a choice of remedy? In other words, what if they went to the district judge and said, Judge, Judge Wake, you're a really smart guy. We don't know whether we're entitled to trademark relief. But if we're not, we'd like damages. If we are, we'd like trademark relief. We'd like A or B, but we'd like you to decide which one we get. Is that, is that a waiver of both? I think that could be. But you have to remember that Selectone is the one that wrote this contract. If they wanted those remedies and to make sure that they, all of the remedies were included, they should have written that in their contract. But there is no qualifying language. It just says add as option A or B. It doesn't say including any other remedies available and that type of thing. But why decide it when the district court did decide it? Because that's, I think, implied in Judge Howard's question about this being a choice of remedies. Why not let it go all the way to trial and then, as often is the case, you can choose one or the other. Why would it be appropriate to affirm it at this early stage when there is this or option? And Judge Weber said it could be either choice. Why not? Well, this breach of contract claim was not raised until the second amended complaint. But it's because of that. Right. No, no, no. I understand that. I was trying to. Okay. So it's in the second amended complaint. And Selectone had filed their motion for summary judgment on this issue. And when the court looked at it in the light most favorable to the non-movement, they found that as a matter of law, and he interpreted the language and he interpreted the words and the plain meaning of the words to mean they had A or B. But the question is, is the plain meaning of the language A or B at the pleading stage only, or how are we to find that particular issue? It's not that there isn't an or. We all recognize that it says or. The question is, when does an or actually take on a force such that they have to make an election with respect to the remedy? I believe that that happened when the default happened. So, in other words, your argument is that the pleading stage had to make a choice. They couldn't plead in the alternative. They couldn't say, I'd like A or B. They had to actually choose based upon the contract. That's your argument? Yes. Okay. The language of the contract, just let me focus on it. Selectone may have its option. Why? I don't know. Accelerate any debt or do it. Declaring them immediately due. Or, void the covenant in paragraph 13 of an instituted action for trademark infringement. So, my question is, do they void the covenant in some other way other than breaking the suit? Well, Your Honor, the judge, Judge Wake did look at all of the No, Judge Wake is a terrific judge. He's very careful. I asked you a very specific question. Did they void the covenant in some other way other than by breaking the suit? In other words, did they send a demand letter to your client and say, we're hereby voiding the covenant? Is the voiding of the covenant solely as a matter of breaking the suit? I believe it's only as a matter of breaking the suit. Also, it's important to note under this contract as well that when that covenant was voided, that Judge Wake did look to see that all of the trademark that was alleged under there included all of the inclusive dates, which would have been before and after the agreement. And it was only until after they had the second amended complaint was the breach of contract claim preceded. One question, counsel. If we were to consider that the state counterfeiting claim had probably been raised on appeal, wouldn't they have sufficiently pleaded under his own law? No, Your Honor, I don't believe so. Because the reason for that is that on a counterfeit is when you're actually making a new product. Now, this month, Congress has pleaded that by copying it from one medium to another, it's actually creating a new product when it's actually challenging it. But this was on 12B6, wasn't it? Or was it on? Trademark, that is correct. The counterfeiting claim. So they pleaded that they made a new product, and they pleaded that there were 26 or more counterfeits out there, and they pleaded sale or distribution. My guess is they can't prove any of that based on what we now know. But isn't that enough at the pleading stage? Well, no, Your Honor, not at this stage either. Because even with counterfeiting, counterfeiting when you're making a new product and adding someone's trademark and trade draws to it, that would certainly be counterfeiting. But in this case, my client didn't either one of those. They copied it from one medium, the CDGs, to another medium. And then if the actual technology of the actual copy is being challenged here, not the actions of my client as far as with their trade dress and trade, you know, if there's any kind of quality is what Mr. ______. Right, but I think Judge Horwitz's question is about how it was pled, not about information we would acquire after, right, the complaint was filed, but about was it sufficiently alleged, right? Because what you're relying upon is important information that is not in the complaint, right? Right, I guess. So the question is about the sufficient pleading. Was it sufficiently pled? In my opinion, it was not. Well, not when it was taken in context with the rest of the pleading. Okay. I only have five seconds. You do. Thank you. Use them well. Okay, well, in conclusion, we are here to ask the court to find and affirm Judge White's rulings on both the breach of contract and the trademark claims. Thank you, counsel. Thank you. Mr. Harrington, you used all your time, but we asked a lot of questions. You may have one minute if you want to. Thank you, Your Honor. I appreciate that. Judge Hurwitz asked the question, or perhaps Mr. Tolbert, or maybe both of you, why are we required at the pleading stage to elect between A or B, the contract damages or the trademark damages? And I think the better answer to that question is yes, no, we are not actually required to make that election, because the purpose of that clause in the agreement is not to play a game as to what gets pled or not. It is to give a remedy. Well, it's your option. And the reason I read that language to your opponent is it says, Sleptone made its option. One is accelerate the debts. They do both bring an action for breach of the agreement. Or C, void the covenant above an institute in action for trademark infringement. Because if the covenant is not voided, then it bars the action for trademark infringement. So isn't your filing of this action for trademark infringement precisely an option to void the covenant? I think, and if I may respond to that question, it is an action that voids the covenant not to sue, but it only voids the covenant not to sue. It doesn't require, or it doesn't let Mr. McCuller off the hook. But you bring this action, Mr. McCuller says, you can't sue me because I have a covenant. And you say, oh, yes, we can, because we've chosen to sue you, rather than pursue the other route. I mean, otherwise, your trademark infringement claim fails on its face because he has a covenant. It fails as to damage, as to acts undertaken prior to some agreement. And you are suing him for those. We are suing, well, I don't think the complaint is clear as to that one. You are seeking damages for those, right? You're seeking damages for trademark infringement that occurred. We are definitely seeking it for damages that occurred after. Because why, if I can use your numbering, why only relates to debts owed to you, which is to say things that occurred beforehand, right? That's correct. Okay. You sued him for those. You sued him for contract breach of contract. You sued him for debts owed to you wholly apart from trademark infringement after the date of settlement, correct? Yes, that is correct. Okay. So when you did that, didn't you necessarily void the covenant? Would you promise not to sue him for those? I think the word or there would prevent that from occurring. But we can sue him for trademark infringement that occurred after the settlement agreement was signed. Even apart from anything, if nothing had happened at all, has there been no breach of contract except that he continued to sue? Sure. And what I'm having trouble with here, and I know I'm taking you over time, is the language that apparently your client drafted, although I'm not sure the record is clear on that, is void the covenant provided in paragraph 13 above and institute an action for trademark infringement. So it seems to me that in order to institute an action for trademark infringement, you necessarily had to void the covenant, didn't you? I think that's no, I don't think so, because our trademark infringement action could very well have related to acts that occurred after the such action being based upon acts of defendant undertaken both before and after the effective date of this agreement. It seems to me that that language, which is kind of strange, says it's a prerequisite to instituting the action for trademark infringement either before or after you have to opt it to void the covenant. I think the point is that we elected at the time of the filing of the second amendment complaint to do both, and our intention was to give ourselves the option for both remedies at a later stage. Thank you, counsel. Thank you. The case just argued is submitted, and we appreciate the arguments from both counsel.
judges: Graber, Hurwitz, Boulware